## STATE v. KENNETH A. BEAVER.

(Filed 15 December, 1965.)

**1. Bills and Notes § 20—**

A warrant charging that defendant did "issue" and "pass" a worthless check cannot be held defective in failing to aver that defendant delivered the check to another, since the words "issue" and "pass", in context, import delivery.

**2. Indictment and Warrant § 9—**

It is not necessary that a warrant use the exact words of a statute, it being sufficient if words of equivalent import are used.

**3. Criminal Law § 99—**

On motion for nonsuit, the evidence must be taken in the light most favorable to the State and it is entitled to the benefit of every reasonable inference to be drawn therefrom.

**4. Bills and Notes § 20—**

Evidence tending to show that defendant issued checks to a named payee, that the checks were not post dated, that there was no understanding that the payee would hold them at the time of delivery, but that a request was made the day thereafter that the payee hold them, which the payee did for a time and then presented them to the drawee bank, which refused payment, *is held* sufficient to overrule nonsuit in a prosecution under G.S. 14-107.

APPEAL by defendant from *McLaughlin, J.,* 10 May 1965 Criminal Session of GUILFORD (Greensboro Division).

The defendant was originally tried in the Municipal-County Court in Greensboro upon two warrants, which are identical except as to dates and amounts. Each warrant charges that the defendant "did unlawfully and wilfully make, utter, issue, draw and pass a worthless check" for a specified amount, knowing that he did not have sufficient funds on deposit or credit with the drawee bank for payment thereof, in violation of Chapter 14, § 107, of the General Statutes of North Carolina.

The defendant being found guilty and sentenced by the Municipal-County Court, appealed to the Superior Court where he was tried *de novo,* the two cases being consolidated for trial. Upon a verdict of guilty in each case, he was sentenced to confinement in the county jail for two years in one case and for 30 days in the other, the sentences to run consecutively. From these judgments he appeals to this Court, assigning as error the overruling of his motion for judgment of nonsuit and a directed verdict of not guilty, certain portions of the charge and certain alleged omissions therein.

In this Court he filed a motion in arrest of judgment in each case on the ground that neither warrant charges a violation of G.S.

14-107 since it is not charged that the defendant did "deliver to another" the check in question. In his brief he states, "This constitutes the defendant's most serious contention in this appeal."

The two checks were introduced in evidence as exhibits for the State. While these exhibits were not included, as such, in the record before us, each was quoted in full in the charge to the jury, no exception being taken to that portion of the charge. Each is in the usual form of a check. Each is payable to the order of Lee Stephenson. Each is drawn on the First-Citizens Bank and Trust Company at Greensboro.

Lee Stephenson testified as to each check that it was given to him by the defendant, it was not post dated, there was no understanding that the payee would hold it; the day after it was given to the payee the defendant requested the payee to hold the check, the payee did so for a time and then presented it to the drawee bank for payment, which was refused. Neither check was endorsed by the payee.

An employee of the drawee bank testified that the defendant opened an account at that bank on 11 January 1965, several months after the checks in question were given by the defendant to the payee. The defendant had no account in the drawee bank when either of the checks was so given to the payee.

*Attorney General Bruton, Assistant Attorney General Icenhour and Staff Attorney O'Quinn for the State.*
*E. L. Alston, Jr. and Gerald A. Pell for defendant appellant.*

PER CURIAM.  G.S. 14-107 provides: "It shall be unlawful for any person * * * to draw, make, utter or issue and deliver to another, any check * * * on any bank * * * knowing at the time of the making, drawing, uttering, issuing and delivering such check * * * that the maker or drawer thereof has not sufficient funds on deposit in or credit with such bank * * * with which to pay the same upon presentation."

The defendant's contention that the warrants do not allege that he delivered the check has no merit. The word "pass" when used in connection with a negotiable instrument means to deliver, to circulate, to hand from one person to another. Black's Law Dictionary; The Century Dictionary; Webster's New International Dictionary. The Negotiable Instrument Law, G.S. 25-1, provides: " 'Issue' means the first delivery of the instrument * * *." Black's Law Dictionary states that the verb "issue" when used with reference to notes and similar papers, which would include a check, imports de-

livery to the proper person. The same authority defines "utter" as "to put or send (as a forged check) into circulation." It is not necessary that the warrant use the exact words of the statute, it being sufficient if words of equivalent import are used. *State v. Heaton,* 81 N.C. 542. Thus, in *State v. Levy,* 220 N.C. 812, 18 S.E. 2d 355, the defendant was convicted of violating G.S. 14-107 under a warrant charging that he "did wilfully, maliciously and unlawfully give" a worthless check. The motion in arrest of judgment is, therefore, denied.

Upon a motion for judgment of nonsuit, the evidence is taken in the light most favorable to the State and it is entitled to the benefit of every reasonable inference to be drawn therefrom. *State v. Tessnear,* 254 N.C. 211, 118 S.E. 2d 393. Here, the evidence offered by the State is clearly sufficient, if believed by the jury, as it was, to support the charge. The motion for judgment of nonsuit and for a directed verdict of not guilty was, therefore, properly overruled. We have examined the exceptions to the charge and find them to be without merit.

No error.